[Nos. 74656-7; 74861-6. En Banc.]
Argued September 28, 2004.     Decided March 17, 2005.

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL O. FREEMAN, *Petitioner*.

THE STATE OF WASHINGTON, *Petitioner*, v. WILLIAM L. ZUMWALT, *Respondent*.

MADSEN, J., concurs in the result only; J.M. JOHNSON, J., did not participate in the disposition of this case.

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*), for petitioner Freeman.

*Sharon M. Brown*, for respondent Zumwalt.

*Norm Maleng, Prosecuting Attorney for King County*, and *Dennis J. McCurdy, Deputy*, and *Andrew K. Miller, Prosecuting Attorney for Benton County*, and *Terry J. Bloor, Deputy*, for the State.

¶1 CHAMBERS, J. — "No person shall be . . . twice put in jeopardy for the same offense." CONST. art. I, § 9; *accord* U.S. CONST. amend. V. With the increasing proliferation of criminal statutes, the same criminal conduct might violate multiple statutes. Because of this, courts must determine whether and, if so, when, convicting a defendant of several different crimes based on the same conduct violates double jeopardy. This largely turns on whether the legislature intended to punish the conduct as separate crimes or to punish the conduct as a single, "higher" felony.

¶2 In both of the cases before the court today, the defendants committed an assault in furtherance of first degree robbery. In both cases, the trial courts entered separate convictions for both the assault and the robbery. Different divisions of the Court of Appeals affirmed in one case and reversed in the other. We affirm the Court of Appeals in each case.

## FACTS

¶3 *STATE V. FREEMAN.* Late one night, Javon Pitchford was invited to a party by a girl he had recently met. Pitchford did

not know it at the time, but he and the girl had a mutual acquaintance in one of his old childhood friends, Michael Freeman. Freeman and Pitchford had seen each other only occasionally since childhood. As it happened, Freeman was among a group of men sent to pick Pitchford up and take him to the party.

¶4 But these men did not take Pitchford to the party. Instead, after a few detours, they stopped the car on a dark, dead-end street. Freeman got out, walked around to Pitchford's side of the car, opened the door, drew a .45-caliber handgun, and ordered Pitchford to hand over any valuables. When Pitchford did not immediately comply, Freeman said, "What, you think I won't shoot you?" and fired a single shot. 1 Report of Proceedings (RP) (Freeman) at 58-59. The bullet ripped through Pitchford's arm, chest, intestines, colon, and liver. Pitchford crawled out the other side of the car and collapsed bleeding in a driveway. Freeman and his associates robbed him and apparently left him for dead.

¶5 Miraculously a cab driver found Pitchford, and he was taken to Harborview Medical Center in the usually deadly state of stage four shock. When Pitchford regained consciousness three days later, he identified Freeman as his assailant. A jury later convicted Freeman of both first degree assault and first degree robbery.

¶6 At sentencing, Freeman unsuccessfully argued that the two convictions were the same for double jeopardy purposes because the jury was instructed that the use of force (effectively, the assault) was an element of the robbery. After multiple sentencing hearings, the trial judge ruled that the two convictions were not the same for double jeopardy purposes because it was "clear that the shooting of Javon Pitchford was not necessary to accomplish the robbery. It was gratuitous . . . one could almost say a cold-blooded afterthought to and not just an adjunct of the robbery." 3 RP (Freeman) at 435. Freeman was sentenced to 231 months confinement, with the assault and robbery convictions running concurrently, and the firearms en-

hancements running consecutively. Freeman appealed to the Court of Appeals, which affirmed (*State v. Freeman*, 118 Wn. App. 365, 76 P.3d 732 (2003)), and we granted review.

¶7 STATE V. ZUMWALT. William Lars Zumwalt and an acquaintance offered to sell drugs to a woman they met at the Fiesta Bowl Casino in Richland, Washington. They agreed to meet in the parking lot to conclude the transaction. Once there, Zumwalt apparently had second thoughts about selling the woman drugs. Instead of simply leaving, Zumwalt punched the victim hard in the face with his fist, knocking her to the ground. He caused serious injuries, including fracturing her eye socket. She was then robbed of approximately $300 in cash and casino chips.

¶8 Zumwalt later admitted he assaulted the woman but denied robbing her. He told the trial judge that he had become suspicious that she might be an agent of the local drug enforcement agency, grown fearful, and was merely trying to get away from her. The trial judge did not find this credible and convicted Zumwalt of first degree robbery and second degree assault. At sentencing, Zumwalt unsuccessfully moved to have the assault conviction vacated as merged with the robbery. The trial judge declined and entered both convictions, sentences to be served concurrently. The Court of Appeals reversed (*State v. Zumwalt*, 119 Wn. App. 126, 82 P.3d 672 (2003)), and we granted review.

ANALYSIS

A. SUMMARY

¶9 Our review is de novo. *State v. Johnston*, 100 Wn. App. 126, 137, 996 P.2d 629 (2000); *State v. Knutson*, 88 Wn. App. 677, 680, 946 P.2d 789 (1997). The State may bring (and a jury may consider) multiple charges arising from the same criminal conduct in a single proceeding. *State v. Michielli*, 132 Wn.2d 229, 238-39, 937 P.2d 587 (1997). Courts may not, however, enter multiple convictions for the same offense without offending double jeopardy.

771

*State v. Vladovic*, 99 Wn.2d 413, 422, 662 P.2d 853 (1983) (citing *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981)).[1] "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). The legislature has the power to define offenses and set punishments. *See State v. Calle*, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995) (rape and incest are separate offenses).

¶10 The dispositive question today is whether and, if so, when, the legislature intended to punish separately both a robbery elevated to first degree by an assault, and the assault itself. *Cf. Garrett v. United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985) (legislature has the power to criminalize every step leading to a greater crime, and the crime itself) (citing *Albrecht v. United States*, 273 U.S. 1, 11, 47 S. Ct. 250, 71 L. Ed. 505 (1927)); *Whalen v. United States*, 445 U.S. 684, 688-89, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). If the legislature authorized cumulative punishments for both crimes, then double jeopardy is not offended. *See generally* William S. McAninch, *Unfolding the Law of Double Jeopardy*, 44 S.C. L. Rev. 411, 483-84 (1993).[2]

¶11 Because the question largely turns on what the legislature intended, we first consider any express or im-

---

[1] *See also* Akhil Reed Amar & Jonathan L. Marcus, *Double Jeopardy Law After Rodney King*, 95 Colum. L. Rev. 1, 28-29 (1995) (double jeopardy "prevents a defendant from being punished separately for two offences where the legislature can be presumed to have provided a penalty for the greater offence that already includes punishment for the lesser included offence").

[2] We recognize the theoretical possibility of legislation that cannot be applied without violating double jeopardy. *See Whalen*, 445 U.S. at 689 n.3 (acknowledging constitutional limits on legislative power to provide cumulative punishments); *see also* George C. Thomas III, Double Jeopardy: the History, the Law 25-27 (1998); *cf. In re Pers. Restraint of Young*, 122 Wn.2d 1, 18-25, 857 P.2d 989 (1993) (analyzing when a civil penalty after a criminal conviction violates double jeopardy). These cases do not raise those issues. We also note that Freeman challenged his offender score and community custody requirements at the Court of Appeals. Since he does not renew those challenges here, we do not reach them.

plicit legislative intent. Sometimes the legislative intent is clear, as when it explicitly provides that burglary shall be punished separately from any related crime. RCW 9A.52.050. Sometimes, there is sufficient evidence of legislative intent that we are confident concluding that the legislature intended to punish two offenses arising out of the same bad act separately without more analysis. *E.g.*, *Calle,* 125 Wn.2d at 777-78 (rape and incest are separate offenses).

¶12 Second, if the legislative intent is not clear, we may turn to the *Blockburger* test. *See Calle,* 125 Wn.2d at 777-78; *Blockburger v. United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). If each crime contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes. *Calle,* 125 Wn.2d at 777; *Blockburger,* 284 U.S. at 304 (establishing "same evidence" or "same elements" test); *State v. Reiff,* 14 Wash. 664, 667, 45 P. 318 (1896) (double jeopardy violated when " 'the evidence required to support a conviction [of one crime] would have been sufficient to warrant a conviction upon the other' ") (quoting *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871)).

¶13 When applying the *Blockburger* test, we do not consider the elements of the crime on an abstract level. " '[W]here *the same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision *requires proof of a fact* which the other does not.' " *Orange,* 152 Wn.2d at 817 (quoting *Blockburger,* 284 U.S. at 304 (citing *Gavieres v. United States,* 220 U.S. 338, 342, 31 S. Ct. 421, 55 L. Ed. 489 (1911))). However, the *Blockburger* presumption may be rebutted by other evidence of legislative intent. *Calle,* 125 Wn.2d at 778.

¶14 Third, if applicable, the merger doctrine is another aid in determining legislative intent, even when two crimes have formally different elements. Under the merger doctrine, when the degree of one offense is raised by conduct

separately criminalized by the legislature, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime. *Vladovic*, 99 Wn.2d at 419.

¶15 Finally, even if on an abstract level two convictions appear to be for the same offense or for charges that would merge, if there is an independent purpose or effect to each, they may be punished as separate offenses. *State v. Frohs*, 83 Wn. App. 803, 807, 924 P.2d 384 (1996) (citing *State v. Johnson*, 92 Wn.2d 671, 680, 600 P.2d 1249 (1979)).

B. APPLICATION

1. *Do the statutes authorize separate punishments?*

¶16 Again, if the statutes explicitly authorize separate punishments, then separate convictions do not offend double jeopardy. *See Calle*, 125 Wn.2d at 776; *In re Pers. Restraint of Burchfield*, 111 Wn. App. 892, 896, 46 P.3d 840 (2002); *cf.* RCW 9A.52.050. Therefore, we begin our analysis with the most important question; what did the legislature intend? Evidence of legislative intent may be clear on the face of the statute, found in the legislative history, the structure of the statutes, the fact the two statutes are directed at eliminating different evils, or any other source of legislative intent. *Ball v. United States*, 470 U.S. 856, 864, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985); *Calle*, 125 Wn.2d at 777-78.

¶17 In this case, the statutes do not explicitly authorize separate punishments. *Compare* RCW 9A.56.200 (first degree robbery) *with* RCW 9A.36.011 (first degree assault). Freeman and Zumwalt argue that we should infer legislative intent based on the legislature's silence in the face of a long line of prior holdings that tended to find the two crimes to be the same for double jeopardy purposes. They note that since 1975, courts have regularly vacated assault convictions when the assault furthered a first degree robbery. *See generally* 13 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 4706, at 340-43 (3d ed.

2004) (collecting cases). Freeman and Zumwalt argue that the fact the legislature has not indicated its discontent with these cases proves its approval. *Cf. State v. Coe*, 109 Wn.2d 832, 846, 750 P.2d 208 (1998).

¶18 It is true that since 1975, courts have generally held that convictions for assault and robbery stemming from a single violent act are the same for double jeopardy purposes and that the conviction for assault must be vacated at sentencing. *See, e.g., State v. Prater*, 30 Wn. App. 512, 516, 635 P.2d 1104 (1981); *State v. Springfield*, 28 Wn. App. 446, 453, 624 P.2d 208 (1981) ("Springfield's one punch . . . can support a conviction for either the robbery or the assault, but not both."), *substantially overruled by Calle*, 125 Wn.2d at 777; *State v. Bresolin*, 13 Wn. App. 386, 394, 534 P.2d 1394 (1975) (merging assault and robbery); *see generally* 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 2107, at 455-65 (3d ed. 2004); 13 ROYCE A. FERGUSON, JR., *supra* § 4706, at 340-44. Vacation of the assault charge is so ubiquitous that the model form in Washington Practice for a motion to merge counts at sentencing lists assault and robbery in the text of the model form. *Id.* at 350-51; *but see State v. Tanberg*, 121 Wn. App. 134, 87 P.3d 788 (2004) *petition for review deferred pending resolution of this matter* (Wash. Nov. 30, 2004). However, we conclude that no per se rule has emerged; instead, courts have continued to give a hard look at each case. *See generally Vladovic*, 99 Wn.2d 413.

¶19 When an assault elevates the degree of robbery, courts have regularly concluded that the two offenses are the same for double jeopardy purposes. However, with the exception of *Springfield* (which was substantially overruled by *Calle*), courts have not held as a matter of law that the two crimes are the same. The fact the legislature has not acted is also, potentially, evidence that it is satisfied with our current practice of analyzing these cases individually.

¶20 Similarly, the State argues that we can find legislative intent to punish these crimes separately in the fact that the two statutes are directed at different evils. *See generally*

*Calle*, 125 Wn.2d 769. But in *Calle*, this court reviewed in detail the history and academic material bolstering its conclusion that the legislature *did* intend to combat different societal evils through the rape and incest statutes. *Calle*, 125 Wn.2d at 780-81. No such historical review appears in the briefing here. Further, a per se holding that the legislature *never* intends these two crimes to merge would also require us to substantially overrule a long line of cases. *State v. Mahoney*, 40 Wn. App. 514, 517, 699 P.2d 254 (1985); *Prater*, 30 Wn. App. at 516; *Bresolin*, 13 Wn. App. at 394; *cf. Vladovic*, 99 Wn.2d at 419; *Johnson*, 92 Wn.2d at 680.

¶21 We find no explicit or implied legislative intent from the legislature's silence in the face of our holdings. Nor do we find explicit or implied legislative intent whether, as a matter of law, these statutes necessarily forbid different types of bad acts.

¶22 However, there is an important piece of evidence that recent legislatures intended to punish *first* degree assault and *first* degree robbery separately, at least under some circumstances. As the legislature is well aware, when a court vacates a conviction on double jeopardy grounds, it usually vacates the conviction for the crime that forms part of the proof of the other. *See, e.g., State v. Valentine*, 108 Wn. App. 24, 26, 29 P.3d 42 (2001); *State v. Read*, 100 Wn. App. 776, 792, 998 P.2d 897 (2000); *Prater*, 30 Wn. App. at 516; *Springfield*, 28 Wn. App. at 453; *State v. Cunningham*, 23 Wn. App. 826, 863, 598 P.2d 756 (1979), *rev'd on other grounds,* 93 Wn.2d 823, 613 P.2d 1139 (1980); *Bresolin*, 13 Wn. App. at 394. This is because the greater offense "typically carries a penalty that incorporates punishment for the lesser included offence." Akhil Reed Amar & Jonathan L. Marcus, *Double Jeopardy Law After Rodney King*, 95 Colum. L. Rev. 1, 28 (1995). But when a first degree assault raises a robbery to first degree robbery, the case is atypical. The standard sentence for first degree assault (in this case, 111 months) is considerably longer than the standard sentence for first degree robbery (in this case, 41

months). Given the fact of the current sentencing schema, it is unlikely the legislature intended this result. While this is not necessarily dispositive, it does weigh upon our analysis. *Cf. Burchfield,* 111 Wn. App. at 900 (considering the seriousness level assigned by the legislature when determining how the legislature intended two related crimes to be treated).

¶23 However, when assault in the second degree elevates robbery to the first degree, the result is more typical. In Zumwalt's case, he received a standard range sentence of 54 months on the "greater" robbery conviction and 17 months for the "lesser" assault conviction, to be served concurrently.

¶24 Accordingly, we conclude that there is evidence that the legislature did intend to punish first degree assault and robbery separately. But we find no evidence that the legislature intended to punish second degree assault separately from first degree robbery when the assault facilitates the robbery.

2. *Are the two crimes, as charged and proved, the same in law and in fact? (The "same evidence" or "same elements" rule.)*

¶25 *Blockburger* is part of our analytical framework. The parties seem to agree in their briefing to this court that *Blockburger* is not a basis to find a double jeopardy violation. Since the parties are not meaningfully adverse on this point, we will briefly address it only to give a more complete overview of modern double jeopardy law.

¶26 When legislative intent is not clear, we turn to the *Blockburger* "same evidence" test. *Blockburger* is another rule of statutory construction specifically designed to determine legislative intent in the context of double jeopardy. *See Garrett,* 471 U.S. at 778-79. Under *Blockburger,* we presume that the legislature did not intend to punish criminal conduct twice when " ' " *the evidence required* to support a conviction upon one of [the charged crimes] would have been sufficient to warrant a conviction upon the other." ' "

*Orange*, 152 Wn.2d at 820 (alteration and emphasis added) (quoting *Reiff*, 14 Wash. at 667 (quoting *Morey*, 108 Mass. at 434)). Accordingly, if the crimes, as charged and proved, are the same in law and in fact, they may not be punished separately absent clear legislative intent to the contrary. *Blockburger*, 284 U.S. at 304. We consider the elements of the crimes as charged and proved, not merely as the level of an abstract articulation of the elements. *See, e.g., Vladovic*, 99 Wn.2d at 423; *see also Orange*, 152 Wn.2d at 817-18 (explicitly rejecting the abstract analysis employed in *Valentine*, 108 Wn. App. at 26-27). However, the mere fact that the same *conduct* is used to prove each crime is not dispositive. *See United States v. Dixon*, 509 U.S. 688, 704, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993) (explicitly rejecting "same conduct" test).

¶27 As we recently ruled, *Blockburger* "is not dispositive of the question whether two offenses are the same. . . . Although the result of this test is presumed to be the legislature's intent, it is not controlling where there is clear evidence of contrary legislative intent." *In re Pers. Restraint of Percer*, 150 Wn.2d 41, 50-51, 75 P.3d 488 (2003) (citing *Calle*, 125 Wn.2d at 778, 780). At that point, we may return to other evidence of legislative intent, "including the statutes' historical development, legislative history, location in the criminal code, or the differing purposes for which they were enacted." *Id.* at 51. The process is recursive, returning to the legislature's intent again and again.

¶28 Since all parties seem to agree that these crimes are not the same at law and since we are resolving these cases on other grounds, we will not take this opportunity to analyze these cases in light of *Blockburger*.

3. *Do these crimes merge?*

¶29 Another tool for determining legislative intent in the context of double jeopardy is the merger doctrine. As we have noted elsewhere:

[T]he merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in

order to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping).

*Vladovic*, 99 Wn.2d at 420-21. In both cases, to prove first degree robbery as charged and proved by the State, the State had to prove the defendants committed an assault in furtherance of the robbery. *Compare* RCW 9A.56.200 (first degree robbery) *with* RCW 9A.36.011 (first degree assault). As charged and proved, without the conduct amounting to assault, each would be guilty of only second degree robbery. *Compare* RCW 9A.56.210, .190 (defining second degree robbery) *with* RCW 9A.56.200 (defining first degree robbery). Under the merger rule, assault committed in furtherance of a robbery merges with robbery and without contrary legislative intent or application of an exception, these crimes would merge. *See generally* 13 FERGUSON, JR., *supra*, § 4706, at 340-44. However, as noted above, we do find some evidence that the legislature specifically did not intend that first degree assault merge into first degree robbery: the hard fact that the sentence for the putatively lesser crime of assault is significantly greater than the sentence for the putatively greater crime of robbery. We find this evidence persuasive. Accordingly, we conclude the merger doctrine applies to merge Zumwalt's first degree robbery and second degree assault convictions, but not Freeman's first degree assault and robbery convictions.

### 4. Did the commission of the "included" crime have an independent purpose or effect from the other crime?

¶30 Finally, we turn to a well established exception that may operate to allow two convictions even when they formally appear to be the same crime under other tests. These offenses may in fact be separate when there is a separate injury to the "the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an ele-

ment." *Frohs*, 83 Wn. App. at 807 (citing *Johnson*, 92 Wn.2d at 680). This exception is less focused on abstract legislative intent and more focused on the facts of the individual case. For example, when the defendant struck a victim *after* completing a robbery, there was a separate injury and intent justifying a separate assault conviction, especially since the assault did not forward the robbery. *See Prater*, 30 Wn. App. at 516. However, this exception does not apply merely because the defendant used *more* violence than necessary to accomplish the crime. The test is not whether the defendant used the least amount of force to accomplish the crime. The test is whether the unnecessary force had a purpose or effect independent of the crime.

¶31 There is no evidence in the record to support a conclusion that the violence used by Freeman to complete the robbery was "gratuitous," or done to impress Freeman's friends, or had some other and independent purpose or effect. Using force to intimidate a victim into yielding property is often incidental to the robbery. *Prater*, 30 Wn. App. at 516. The grievousness of the harm is not the question. *See Read*, 100 Wn. App. at 791-92. While the trial court noted in his oral ruling that Freeman may have shot Pitchford to impress his friends, it was not found by the jury. Based on the crime charged and proved, Freeman shot Pitchford to facilitate the robbery. This exception would not apply.

¶32 Similarly, this exception would not apply in Zumwalt's case. We are not without sympathy to the fact Zumwalt inflicted severe harm on his victim. However, the decision on what to charge is vested with the prosecutor, and the fact the violence used was excessive even in relation to the crime charged is not an appropriate basis for avoiding merger, although it may of course be considered in sentencing or in seeking an exceptional sentence.

## CONCLUSION

¶33 We conclude that the legislature did intend to punish first degree assault and first degree robbery sepa-

rately, as the "lesser" crime has the greater standard range sentence. We also conclude that a case by case approach is required to determine whether first degree robbery and second degree assault are the same for double jeopardy purposes. Generally, it appears that these two crimes will merge unless they have an independent purpose or effect. We affirm both divisions of the Court of Appeals and remand Zumwalt's case to the trial court for resentencing. Given our disposition, we do not reach the remaining issues.

ALEXANDER, C.J.; C. JOHNSON, SANDERS, BRIDGE, OWENS, and FAIRHURST, JJ.; and IRELAND, J. Pro Tem., concur.

MADSEN, J., concurs in the result.