

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1544-12

### CHRISTOPHER GARFIAS, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

**COCHRAN, J., filed a concurring opinion in which WOMACK, JOHNSON, and ALCALA, JJ., joined.**

### CONCURRING O P I N I O N

I agree that appellant has not established that "the undisputed facts show a double jeopardy violation is clearly apparent from the face of the record."[1] I do not think that either we or the lower courts should establish a hard-and-fast rule that aggravated robbery by threat and aggravated assault causing bodily injury always (according to the court of appeals) or never (according to the majority) violates double jeopardy. As with so many things in life

---

[1] *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

and law, it all depends. Here, it all depends on the trial record which, according to the State's theory at trial and on appeal, shows two separate and distinct incidents—first, a failed robbery attempt and then a separate aggravated assault in which appellant shot the victim four times. In this case, the prosecutor made it clear to the jury in closing argument that the evidence showed two distinct events. And the record supports that distinction. When the defendant fails to establish that the jury convicted and punished him twice for "the same offense"–here the same criminal act–he may not prevail in his double-jeopardy claim raised for the first time on appeal.

## I.

Appellant was charged with (1) aggravated robbery by threat to Shahid Shahid and (2) aggravated assault by causing bodily injury to Shahid Shahid. The evidence at trial showed that Mr. Shahid was a Pakistani immigrant who worked the night shift as a clerk at a Conoco gas station. Mr. Shahid's boss told him to lock the doors every night at midnight, but that he could let in "a regular customer" to let them play the game machines or buy some food. Shortly after midnight on March 1st, he unlocked the door and let in Robbie Fernandez, a regular customer, who was accompanied by appellant. Mr. Shahid went back to stocking the shelves.

Suddenly he heard a loud bang, like the sound of a bullet and the shattering of glass. He looked out toward the front door and saw appellant and Robbie standing right outside the

door.  Appellant had a gun in his hand, so Mr. Shahid ran to call the police.[2]  Then Robbie, who was crying, ran back into the store and tried to hide behind Mr. Shahid.  Appellant came in right after Robbie and pointed his gun at Mr. Shahid who put his hands up and "requested, don't sho[o]t me.  This guy, no argument with me, no argument, no fire, this guy."  Appellant fired four shots at Mr. Shahid from just three feet away.  When police arrived, they found Mr. Shahid bleeding on the ground.  They didn't think that he would survive.  Robbie was there with Mr. Shahid, but appellant had fled in Robbie's car.

## II.

The State's theory all along has been that there were two distinct incidents: In its present Brief, the State argues, "[T]his was not a so-called stop-motion prosecution. . . . Appellant shot at the service station in order to obtain entry, had planned to rob the store with a co-defendant, and upon entering, shot the victim 4 times at close range."[3]  The trial record is not crystal clear on the issue of whether appellant fired the gun to break the glass and

---

[2] It was the State's theory at trial that this marked the end of the attempted robbery.  In closing argument, the first prosecutor explained that the evidence showed that, before going to the gas station that night, appellant and Robbie had planned to rob Mr. Shahid although that planning was not an act amounting to more than mere preparation.  "But the minute the Defendant walked in that convenience store with a loaded handgun, he took an extra step of not mere preparation, but now he's attempting to commit an aggravated robbery.  How do we know that?  From his own mouth.  He told you in his interview."

The second prosecutor came back to the subject.  She explained that appellant had told the detectives that he and Robbie needed some money for drugs so that's why they went there.  "Maybe Robbie was in on it.  'Hey, I know somebody.  I know a place we can get some quick cash.'  So they go there.  And that's where the attempt comes in.  He's carrying a loaded gun, he walks through those doors.  There is the attempt.  Whether he walks out or comes back in, it's all part of the course, all part of the attempt."

[3] State's Brief at 11.

reopen the locked door, as a separate incident to the shooting of Mr. Shahid. But it was appellant's burden to show that the record is clear that there was only one criminal act–the act of pointing then shooting the gun–that establishes both the attempted robbery by threatening or placing Mr. Shahid in fear and the aggravated assault by causing bodily injury.

Suppose that, after appellant shot the glass door, he ran off while Robbie came inside and helped Mr. Shahid call the police. Given Robbie's testimony that the two had planned to rob Mr. Shahid to get drug money, could the State have successfully prosecuted appellant for aggravated robbery? I think so. A jury could reasonably believe that appellant (1) placed Mr. Shahid in fear when he shot out the glass door, and (2) shot out that glass door with an intent to obtain money. Thus, he was, at that moment, acting "in the course of committing theft of property" even though he never actually took any money, either before or after shooting Mr. Shahid.

The shooting of Mr. Shahid appears to be a separate, arguably gratuitous, act of assault.[4] Appellant made no effort to take any money nor showed any intent to steal anything when he came back inside the store. From the surveillance video and the testimony, a

---

[4] *See, e.g., State v. Freeman*, 76 P.3d 732, 737-39 (Wash. Ct. App. 2003) (convictions for aggravated robbery and aggravated assault did not "merge" and violate double jeopardy when evidence showed that, in shooting victim, defendant did something "far beyond what was necessary to merely further the robbery," as victim offered no resistance and gave no indication that he was not going to give over his money); *State v. Prater*, 635 P.2d 1104, 1107 (Wash. Ct. App. 1981) (convictions for aggravated robbery and aggravated assault did not "merge" when evidence showed that the shooting of one victim was gratuitous, not part of the robbery, and, by disabling the victim, hindered rather than assisted the robbery; however, the beating of victim's wife was done in an attempt to make her find the money, the object of the robbery, and thus that aggravated-assault conviction merged into robbery).

reasonable jury could conclude that appellant was just plain furious at both Robbie and Mr. Shahid and came back inside to shoot them both. Robbie was protected by Mr. Shahid who took all four bullets in his body. Appellant immediately ran back outside and made his getaway in Robbie's car.

Perhaps the jury did not believe that there were two separate wrongful and criminal acts; they could have believed that both the robbery and the aggravated assault were committed with the single act of appellant pointing his gun at Mr. Shahid and then shooting four times. But it was appellant's burden to either raise his double-jeopardy issue in the trial court and thus formally litigate the issue with a special jury issue or else establish that the record clearly shows that the jury could only have found a single criminal act.

The State notes that a "[m]ore troubling" issue is that the court of appeals seemed to accuse it of artful pleading designed to avoid a double-jeopardy issue. It says that the court of appeals justified reversal of appellant's conviction because "the State 'could have' chosen to charge the offense differently, in which case double jeopardy would certainly be violated."[5] Indeed, pleading one statutory version of the aggravated-assault statute for purposes of the robbery count and the other statutory version of aggravated assault for the assault count does raise a whiff of being "too clever by half" in avoiding a double-jeopardy

---

[5] State's Brief at 12 (citing *Garfias v. State*, 381 S.W.3d 626, 632 (Tex. App.–Fort Worth 2012)).

violation.[6]  But, from the very beginning, the State has stoutly maintained that there were two separate crimes committed here.  And the evidence supports that position.  We need not either condemn nor condone artful pleading.

I therefore concur in the Court's judgment and its holding that appellant has failed to establish a double-jeopardy violation.

Filed: February 26, 2014
Publish

---

[6] *See Ex parte Denton*, 399 S.W.3d 540, 546-547 (Tex. Crim. App. 2013) (aggravated assault was a lesser-included offense of aggravated robbery, and, thus, convictions for both crimes with regard to the same victim in the same incident were in violation of defendant's double-jeopardy protections, when assault was established by proof of the same or less than all the facts required to establish the robbery); *id*. at 556 (Keller, P.J. concurring) ("So, can two gunshots occurring in the same transaction constitute separate assaults with respect to the same victim? Do they constitute multiple threats that can be punished separately? I am unaware of any published cases from this Court that have addressed the question. In its holding in a case involving the prosecution of both an aggravated robbery and an aggravated assault, the Second Court of Appeals has suggested that multiple assaults against the same victim in the same transaction can constitute only one offense. Although I do not necessarily agree with all of the reasoning in the Second Court's opinion, I agree with the implication that the legislature did not contemplate separately punishing multiple assaults against the same victim in the same transaction.") (footnote omitted).