[No. 46023. En Banc. October 4, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. GARY L. JOHNSON, *Appellant.*

*John A. Strait,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Ronald A. Franz, Deputy,* for respondent.

Rosellini, J.—The appellant was found guilty of two counts each of first–degree rape, first–degree kidnaping, and first–degree assault. The jury made special findings that he was armed with a deadly weapon when committing the assaults and kidnapings. He was found not guilty of statutory rape. In a supplemental proceeding, he was adjudged to have the status of habitual criminal. Concurrent life sentences were imposed for each of the convictions for rape, kidnaping and assault.

At the trial, the appellant had been represented by counsel of his own choice, who withdrew at the appellant's request and with the approval of the court after arguing a motion for a new trial. The appellant's indigence being shown, the court appointed a public defender to represent him at the supplemental hearing and sentencing. The appellant grew dissatisfied with appointed counsel, and his present counsel was then appointed to represent him on appeal.

Before discussing the issues raised by present counsel, we will summarize the facts, as disclosed by the prosecution's evidence. The appellant, alone in his automobile, picked up two hitchhikers, girls 13 and 14 years of age, who willingly went with him to his home, a 3–room cabin, to drink wine and smoke marijuana. While the girls were engaged in these activities and amusing themselves in the living room, he locked the entrances and wrote a note, which he delivered to one of them when he summoned her to the bathroom. There, after holding a knife to her neck and declaring his intention to rape her, he removed her bib overalls and bound her hands and mouth with adhesive tape. The note contained a threat to kill her if she did not do as he told her.

Again carrying the knife, he approached the other girl, who was sitting in the living room dozing. He directed this girl to the bathroom, where the first girl was told to explain what would happen if his directions were not followed. He then dragged one of the girls to the bedroom and called the other to join them, which she did. He had them lie on the

bed and used adhesive tape and jean material to secure one hand of each girl to a bedpost and their other hands together. He had intercourse with each girl, after which he left the house upon their request that he purchase cigarettes.

When he was gone, one of them managed to free herself, took the note and escaped to a neighboring house, where, in an obviously distraught state, she reported that she had been raped and that a man was raping her friend in the cabin and was going to kill her. The sheriff's office was contacted and deputies were dispatched to the scene. Before their arrival, however, the appellant had returned and, finding that one girl had fled and the other had managed to extricate herself, ordered the latter to go to his car. As they were leaving, two men arrived to inquire about the purchase of the automobile, which the appellant had advertised for sale that day. He told them to return an hour later. The girl did not communicate with the men but testified that she tried to whisper to them to get help. They noticed that she looked as though she had been crying.

The appellant took this girl to a wooded area, made her lie on a sleeping bag (he still had a knife in his hand, as well as a bottle of wine) and had intercourse with her. Afterwards, he sat on the ground crying until she persuaded him to take her to the home of friends. On the way he told her that he was going to commit suicide. He was arrested when he returned to his cabin, where sheriff's deputies were waiting for him.

The appellant's counsel, urging that his client is entitled to a new trial, advances a theory which admittedly was not raised in the trial court. He acknowledges the general rule to be that alleged errors which were not called to the attention of the lower court will not be considered on appeal. RAP 2.5(a). He contends, however, that his theory involves a "manifest error affecting a constitutional right", which the court will consider under RAP 2.5(a)(3). His theory is that the accumulation of charges in a case such as this was not intended by the legislature to unduly prejudice

the jury, and operates to deny a defendant a fair trial; and, further, that it is forbidden under the double jeopardy clauses of the state and federal constitutions. (U.S. Const. amend. 5; Const. art. 1, § 9.) While we have not concluded that counsel is entirely correct in his evaluation of the impact of the claimed error, we find that it has sufficient substance to warrant consideration on appeal.

Counsel urges that the prosecutor should not have been permitted to charge the appellant with the crimes of kidnaping and assault, but only with the crime of rape in the first degree. The statutes defining these three crimes provide:

> [Rape in the first degree.] (1) A person is guilty of rape in the first degree when such person engages in sexual intercourse with another person not married to the perpetrator by forcible compulsion where the perpetrator or an accessory:
> (a) Uses or threatens to use a deadly weapon; or
> (b) Kidnaps the victim; or
> (c) Inflicts serious physical injury; or
> (d) Feloniously enters into the building or vehicle where the victim is situated.

RCW 9.79.170(1).

> [Assault in the first degree.] (1) Every person, who with intent to kill a human being, or to commit a felony upon the person or property of the one assaulted, or of another, shall be guilty of assault in the first degree when he:
> (a) Shall assault another with a firearm or any deadly weapon or by any force or means likely to produce death; or
> (b) Shall administer to or cause to be taken by another, poison or any other destructive or noxious thing so as to endanger the life of another person.[1]

RCW 9A.36.010.

---

[1] "[Assault in the second degree.] (1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:

[Kidnaping in the first degree.] (1) A person is guilty of kidnaping in the first degree if he intentionally abducts another person with intent:

(a) To hold him for ransom or reward, or as a shield or hostage; or

(b) To facilitate commission of any felony or flight thereafter; or

(c) To inflict bodily injury on him; or

(d) To inflict extreme mental distress on him or a third person; or

(e) To interfere with the performance of any governmental function.[2]

RCW 9A.40.020(1).

It will be seen that in order to obtain a conviction under RCW 9.79.170, the prosecutor must prove not only that the defendant committed rape, but that the rape was accompanied by an act which is defined as a separate crime elsewhere in the criminal statutes. Even though it is not necessary to prove more than one such additional crime, and a particular accused may have committed two or more of the listed crimes in connection with a rape, counsel contends that it was the legislative intent that any such attendant crime should not be a subject for independent prosecution.

In support of this theory, he calls the court's attention to the fact that the former rape statute did not distinguish different degrees of rape, and a single penalty was provided,

---

"(a) With intent to injure, shall unlawfully administer to or cause to be taken by another, poison or any other destructive or noxious thing, or any drug or medicine the use of which is dangerous to life or health; or

"(b) Shall knowingly inflict grievous bodily harm upon another with or without a weapon; or

"(c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm; or

"(d) Shall knowingly assault another with intent to commit a felony; or

"(e) With criminal negligence, shall cause physical injury to another person by means of a weapon or other instrument or thing likely to produce bodily harm." RCW 9A.36.020(1).

[2] "[Kidnaping in the second degree.] (1) A person is guilty of kidnaping in the second degree if he intentionally abducts another person under circumstances not amounting to kidnaping in the first degree." RCW 9A.40.030(1).

no matter how aggravated the rape might have been. Where aggravating circumstances were present, prosecutors found it necessary to add charges in order to assure that the defendant would be given a punishment commensurate with his crime.

It was not uncommon that the use of this device resulted in excessive punishments. The practice of increasing the punishment by pyramiding the charges was particularly troublesome where broadly worded kidnaping statutes were employed. Such statutes carried heavy penalties. In order to subject the defendant to those penalties, a kidnaping would be charged where there was a rape, even though the abduction or restraint involved was merely incidental to the rape and involved no increased risk of harm. A number of courts perceived that such employment of kidnaping statutes was not within the legislative intent. *See People v. Levy,* 15 N.Y.2d 159, 204 N.E.2d 842, 256 N.Y.S.2d 793 (1965); *People v. Adams,* 34 Mich. App. 546, 192 N.W.2d 19 (1971); *People v. Daniels,* 71 Cal. 2d 1119, 459 P.2d 225, 80 Cal. Rptr. 897, 43 A.L.R.3d 677 (1969).

In enacting RCW 9.79.170 and the Washington Criminal Code, RCW Title 9A, the legislature has removed the necessity or occasion for the pyramiding of charges or the misuse of kidnaping charges by creating more clearly defined degrees of crimes, as in the rape and kidnaping statues, and specifying the types of conduct incidental to the crime which will call forth more severe penalties.

As we read the statutes, the legislature intended that conduct involved in the perpetration of a rape, and not having an independent purpose or effect, should be punished as an incident of the crime of rape and not additionally as a separate crime.

While it is not expressly set forth in the statute, this construction of the legislative intent is nowhere negated. That the legislature was mindful of the question whether multiple punishments should be imposed for crimes incidental to a given offense is evidenced in RCW 9A.52.050. That section provides:

Every person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately.

If this section is read with RCW 9A.52.020 and .030, defining burglary in the first and second degrees,[3] it will be seen that, while subsection (1) of .020 includes assault as an element, subsection (1) of .030 involves no other offense. Both, however, have as an element the intent to commit another crime. It would appear, therefore, that RCW 9A.52.050 has reference to such other crimes, rather than to the assault which is an element of first–degree burglary. From the fact that the legislature found this provision necessary, it can be inferred that the legislative assumption was that without it, a question would arise whether such crimes could be punished. If this was the legislative thought with respect to crimes which clearly would not involve multiple punishments, it is not unreasonable to conclude that it was taken for granted that such punishments would be avoided under other sections of the code.[4]

---

[3] "[Burglary in the first degree.] (1) A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein." RCW 9A.52.020(1).

"[Burglary in the second degree.] (1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle." RCW 9A.52.030(1).

[4] The intent which we find implied in the statutes under consideration here is in harmony with the American Law Institute's Model Penal Code § 1.07, which provides that, when the conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense, but may not be convicted of more than one offense if one offense is included in the other. An included offense is defined as one which is established by proof of the same or less than all of the facts required to establish the commission of the offense charged. We are told that the code provided a "part of the impetus" for the enactment of the Washington Criminal Code.

That it is unjust and oppressive to multiply punishments for a single offense is a concept which has gained recognition in the courts of this state. *See State v. Maloney,* 78 Wn.2d 922, 481 P.2d 1 (1971); *State v. Rhodes,* 18 Wn. App. 191, 567 P.2d 249 (1977); *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975); *State v. Waldenburg,* 9 Wn. App. 529, 513 P.2d 577 (1973); and *State v. Wilder,* 4 Wn. App. 850, 486 P.2d 319 (1971).

Three of these cases were decided before the adoption of the criminal code and may well have had some impact upon the legislative intent. Considering all of these factors and the fact that the statutes in question were obviously designed to remove the occasion for "pyramiding" crimes, we conclude that the legislature intended that punishment for first–degree rape should suffice as punishment for crimes proven in aid of the conviction, which are incidental to and elements of the central crime.

This conclusion is strengthened when it is observed that constitutional double jeopardy provisions forbid double punishment.

The United States Supreme Court has stated in *Brown v. Ohio,* 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977):

Because it was designed originally to embody the protection of the common–law pleas of former jeopardy, see *United States v. Wilson,* 420 U. S. 332, 339–340 (1975), the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple

punishments for the same offense." *North Carolina v. Pearce,* 395 U. S. 711, 717 (1969) . . .

(Footnote omitted.)

The court in *Brown* repeated the test stated in *Blockburger v. United States,* 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932):

The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

The *Brown* case involved a prosecution for auto theft after the defendant had been convicted of joyriding, a lesser included offense. It was held that the conviction of the lesser included offense barred the subsequent prosecution of the greater offense, at least where there was no showing that evidence of the greater offense was not available to the prosecution at the time of the first trial, since the lesser offense required proof of no fact which was not required for proof of the greater offense.

The Supreme Court did not go so far as to say that a defendant may not be convicted of a lesser included offense as well as the greater offense, but only that he may not be subjected to cumulative punishment. And this court said in *In re Rice,* 24 Wn.2d 118, 163 P.2d 583 (1945), that concurrent sentences constitute only one punishment. We believe, however, that such a conclusion necessarily follows if justice is to be fully served. Conviction in itself, even without imposition of sentence, carries an unmistakable onus which has a punitive effect and the presence of multiple convictions is apt to affect the minimum sentence set by the parole board. Further, if a prosecutor may not secure a subsequent conviction for the same offense, he should not be permitted to secure a concurrent conviction.

However, we need not decide at this time whether multiple convictions result in double jeopardy, even though the punishment imposed is concurrent. We believe that the statutes, viewed in their framework and construed in favor

of persons accused, as they must be, lend themselves to an interpretation which prohibits such convictions.

However, this does not mean that the prosecutor should not be permitted to prosecute for included offenses[5] or that the jury should not consider such offenses in reaching its verdict. What it does mean is that the jury should be instructed that if it finds the defendant guilty of a greater offense, it cannot find him guilty of a lesser offense which is included in the greater. The jury was so instructed in this case with respect to lesser degrees of the crimes of rape, kidnaping, and assault. But the court did not instruct, nor in fairness to the court was it asked to instruct, that if the jury found the defendant guilty of first–degree rape, it should not render a verdict on the charges of kidnaping and assault.

Of course, under RCW 9.79.170, assault and kidnaping are not "included" offenses in the usual sense of the term. That is, they are not lesser degrees of the same crime, and it is not necessary to prove either of them in every case. However, in any given case, it is necessary to prove at least one of the crimes specified in the statute. We hold that, as to any such offense which is proven, an additional conviction cannot be allowed to stand unless it involves some injury to the person or property of the victim or others, which is separate and distinct from and not merely incidental to the crime of which it forms an element.

As we have said, the prosecutor should not be denied the right to charge the separate offenses, for he may fail to persuade the jury that the greater offense was committed, while succeeding in proving the ancillary crimes. There is no reason to deprive him of this opportunity. The appellant urges that the presentation to the jury of so many charges tends to overwhelm the jury, but it cannot be overlooked

---

[5]In fact such joinder is required in order to avoid the prohibition of the double jeopardy clause, according to Justices Brennan, Marshall and Douglas. *See* the concurring opinions of Justice Brennan in *Brown v. Ohio,* 432 U.S. 161, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977), and *Ashe v. Swenson,* 397 U.S. 436, 453–54 and n.7, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970). Further, CrR 4.3 permits such joinder.

that it is to the defendant's advantage to have the jury instructed upon lesser degrees of crime and less serious crimes, in the hope that it will settle upon one or more of these rather than the major crime or crimes with which the defendant is charged. A complicated criminal transaction necessarily gives rise to multiple charges and instructions, and this is a result which it is difficult to avoid if justice is to be accorded both the defendant and society.

Under the evidence in this case, the restraints and use of force were elements which elevated the acts of sexual intercourse to rape in the first degree. Although proof of only one such element was necessary, both were intertwined with the rape. They occurred almost contemporaneously in time and place. The sole purpose of the kidnaping and assault was to compel the victims' submission to acts of sexual intercourse. These crimes resulted in no injury independent of or greater than the injury of rape. Nevertheless, they were crimes for which, without the additional proof of rape, the defendant could have been convicted under RCW 9A.36.010 and 9A.40.020(1). But as we construe the legislative intent, when that proof was accepted by the jury, those crimes became merged[6] in the completed crime of first–degree rape.

Cumulative punishments were not imposed in this case. Unless there was some other flaw in the proceedings below,

---

[6]Construing the former second–degree felony murder statute (RCW 9.48-.040(2)) in *State v. Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966), this court found no expression of a legislative intent to exclude from the meaning of the words "any other felony" the assault which produces the death of the victim, thus rejecting the "merger" doctrine which has been applied to such statutes in the majority of jurisdictions. That interpretation has been adhered to in subsequent decisions (in spite of vigorous dissents) because the legislature has not seen fit to reject it when amending the statute. *State v. Wanrow*, 91 Wn.2d 301, 588 P.2d 1320 (1978). The cases decided under that statute are distinguishable in that they involve not only different statutory language, but different issues. The question was not whether an accused could be found guilty of both second–degree murder and the assault by which he perpetrated it, but rather whether the trier of the facts could properly consider such assault in determining whether a killing was second–degree murder or some lesser offense. There is no suggestion in any of these cases that an intent to merge crimes can never be implied in any legislative context.

necessitating reversal, any injustice to the appellant resulting from the failure to instruct that convictions of assault and kidnaping could not be returned if first–degree rape was found, can be remedied by the striking of those convictions.

█ To establish his client's right to a new trial, appellate counsel urges that his predecessor in the court below was incompetent, although he was a lawyer with many years of experience. As this court said in *State v. Robinson,* 75 Wn.2d 230, 450 P.2d 180 (1969), the test of incompetence is: After considering the entire record, can it be said that the accused was afforded effective representation and a fair and impartial trial? Quoting from *State v. Thomas,* 71 Wn.2d 470, 429 P.2d 231 (1967), we pointed out that trial strategies and techniques may vary among lawyers, and the effectiveness of counsel cannot be measured by the result obtained. If the evidence supports a finding beyond a reasonable doubt that the defendant was guilty as charged, it cannot be asserted that his counsel was incompetent simply because the defendant was not acquitted.

Appellate counsel presents the court a laundry list of trial counsel's omissions but fails to show that any of them was unwarranted under the circumstances of the case.

We need not prolong this opinion by a discussion of all of these charges. We have reviewed the record and find that none of them has substantial merit. Because of the earnestness with which it is urged, one of them deserves some mention.

It is maintained that trial counsel was remiss in not urging upon the jury appellate counsel's theory that his client lacked the capacity to form the intent required for the commission of the various crimes with which he was charged.

Upon the subject of diminished capacity, trial counsel requested and secured an instruction setting forth the intoxication defense provided under RCW 9A.16.090.

No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of [his] intoxication may be taken into consideration in determining such mental state.

"Intoxication" refers to an impaired mental and bodily condition which may be produced by either alcohol, which is a drug, or by any other drug.

Instruction No. 42. The court expressed misgivings about giving the instruction, evidently regarding the supporting evidence as barely sufficient to warrant it. That there must be substantial evidence to establish the defense before an instruction is required, see *State v. Tyler*, 77 Wn.2d 726, 466 P.2d 120 (1970).

The State's evidence was virtually conclusive that the appellant committed the acts with which he was charged, and there was also sufficient evidence that he was aware of what he was doing at the time. He asserted before and at the trial that he did not remember the criminal transaction, and his medical witness testified that he might have suffered a blackout if he had consumed the quantities of intoxicants claimed. The doctor, however, did not testify and, it is apparent, would not have testified had he been asked, that in his opinion the appellant had been incapable of forming a criminal intent. It is not claimed that such medical testimony could have been obtained.

While asserting that he could not remember the crimes, the appellant remembered the events immediately preceding the crimes and those immediately following. He testified that he had been drinking and using drugs for several days. However, he was able to drive a car without any apparent difficulty, to go into stores and make purchases, to bind up his victims with adhesive tape, and to write a legible and coherent threatening note. Witnesses who saw him at the time of the crime, including a friend to whom he gave a ride while he had the girls in the car, all testified that he did not appear to be intoxicated. The jury must

also have found it difficult to believe that the crime of rape, particularly when carried on for the extended periods of time described by the prosecuting witnesses, did not involve volition on the part of the appellant.

Faced with the abundant evidence of intent, trial counsel chose to attack the prosecuting witnesses' credibility with respect to the alleged coercion, rather than to focus upon a claim of diminished capacity, a choice which would not appear to be unrealistic under the evidence. The record shows that he argued the case earnestly. He succeeded in convincing the jury that the girls lied to the appellant about their age, resulting in an acquittal of statutory rape. That he did not succeed in persuading them that he was innocent of first-degree rape is attributable not to his lack of diligence but to the strength of the State's case.

It may have been, as appellate counsel suggests, that pursuit of the defense of mental incapacity by reason of intoxication would have been more fruitful; but that is extremely doubtful unless there was additional evidence which could have been produced to establish that defense, and appellate counsel does not maintain that there was. Insofar as we are shown, all of the evidence favorable to the appellant which was procured or could have been procured was placed before the jury. We are shown nothing, inside or outside the record, to support a conclusion that had a different argument been made, a different verdict would have been likely.

The story revealed by the evidence was a sad and pitiful one, but the acts proven by the State were nevertheless crimes, as defined by the legislature, and it is apparent that the defense could not produce substantial evidence that the appellant did not intend to commit them. The jury had little choice but to find the appellant guilty.

We affirm the conviction of the crime of rape, and the cause is remanded with directions to strike the kidnaping

and assault convictions and sentences.

UTTER, C.J., WRIGHT, BRACHTENBACH, HOROWITZ, DOLLI-VER, HICKS, and WILLIAMS, JJ., and ROBERTS, J. Pro Tem., concur.

Reconsideration denied December 26, 1979.