IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>      v.<br><br>DOUGAL, DANIEL JOHN WALTER,<br>DOB: 08/02/1961,<br><br>               Appellant. | No. 80217-8-I<br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Daniel John Walter Dougal appeals from the judgment entered on the jury's verdicts finding him guilty of possessing stolen property in the second degree and trafficking in stolen property in the first degree. He contends that his convictions violate the prohibition against double jeopardy. Finding no error, we affirm.

FACTS

In April 2016, Jeremy Wlazlak worked for SERVPRO of North Everett/Lake Stevens/Monroe, "a mold, water and fire damage restoration company." On April 27, while working on a job at an apartment complex in Everett, Wlazlak discovered three commercial-grade dehumidifiers and some other equipment missing from the jobsite. He reported the theft to the police, and Everett Police Department Officer Kerby Duncan responded to the call. Wlazlak said the dehumidifiers were a unique "Servpro green color" and had an estimated

Citations and pin cites are based on the Westlaw online version of the cited material.

market value of $1,200 to $1,700 per unit. To complete the apartment complex job, SERVPRO had to bring in and place new equipment, categorize where it needed to go, and inventory it.

On June 23, 2016, property crimes Detective Danny Rabelos learned of "some stolen property [that] was being sold on the [I]nternet." Detective Rabelos contacted the seller, later identified as Donald Edward Foster, and discussed the purchase of two large, commercial-grade dehumidifiers. The detective then handed the investigation over to members of the police department's "Anticrime Team."

Members of the Anticrime Team continued to contact Foster as part of an "undercover operation." They arranged an in-person meeting with Foster to look at "and try to assess whether they were the stolen [SERVPRO] dehumidifiers." Officer Duane Wantland's role was to "act as a customer to look at the dehumidifiers." After driving a "plain car" to the initial meeting location, a rest area on Interstate 5 in south Everett, Officer Wantland spoke to Foster. Foster introduced himself as "Eddie." Wantland asked if "they were going to be solid on the price that I knew that they were listed for" and told Foster that "once I saw the machines, then I could negotiate with him further." Foster told Officer Wantland to "follow him to another location" and they drove their separate cars to a gas station in Mountlake Terrace.

Once at the gas station, Officer Wantland asked Foster about the location of the dehumidifiers. Foster then drove away and returned less than an hour later in his car, accompanied by a white truck with two "large green dehumidifiers

2

that were sticking up from the bed of the pickup." Dougal was driving the truck. Both Foster and Officer Wantland approached Dougal, who had stepped out of the truck. Officer Wantland asked Dougal if "the asking price of $2,000 . . . was going to be the price." Dougal responded that "that price wasn't going to work and that he wanted more money for the dehumidifiers."

At that point, Officer Oleg Kravchun and Officer Anatoliy Kravchun, who had driven an unmarked police surveillance van to the gas station, got out of the van and approached Dougal. They wore their police uniforms and identified themselves by saying "police." Dougal tried to run away and "evade the scene" but officers quickly caught him.

Officer Anatoliy[1] then advised Dougal of his Miranda[2] rights and detained him in handcuffs. Dougal told Officer Anatoliy that he understood his rights. Dougal then told Officer Anatoliy that he got the dehumidifiers from "Keith," who "owed him a thousand dollars and had given those to him instead." Dougal admitted that "Keith was a thief" because "Keith had stolen from him before." Dougal also told Officer Anatoliy that he told Foster not to post the dehumidifiers for sale, "but he did anyways." Then Foster told Dougal that he "already had a buyer."

On June 28, 2016, SERVPRO project manager David Carroll identified the two dehumidifiers recovered by the Anticrime Team as those discovered stolen from the Everett jobsite on April 27, 2016.

---

[1] We refer to Officer Oleg Kravchun and Officer Anatoliy Kravchun by their first names for clarity and intend no disrespect.

[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State charged Dougal with one count of possession of stolen property in the second degree in violation of RCW 9A.56.160(1)(a) and one count of trafficking in stolen property in the first degree in violation of RCW 9A.82.050(1). Wlazlak, Officer Duncan, Detective Rabelos, Officer Wantland, Officer Anatoliy, Officer Oleg, and Carroll all testified at trial. Dougal did not testify or call any witnesses. A jury found Dougal guilty of both counts. Dougal appeals.

ANALYSIS

Dougal argues that his convictions violate the prohibition against double jeopardy under the merger doctrine. He contends that the crime of possession of stolen property in the second degree elevates the crime of trafficking in stolen property in the second degree to trafficking in stolen property in the first degree. We disagree.

We review a claim of double jeopardy de novo. State v. Mutch, 171 Wn.2d 646, 661-62, 254 P.3d 803 (2011). The federal and state constitutions protect against multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, article I, section 9 of the Washington Constitution mandates that "[n]o person shall be . . . twice put in jeopardy for the same offense."

When the State charges and a jury finds a defendant guilty of multiple counts for a single incident, the convictions do not violate double jeopardy if the legislature intended to impose cumulative punishments for the crimes. In re

4

Pers. Restraint of Borrero, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007). We apply a four-part test to determine whether the legislature intended multiple punishments for a single incident. State v. Freeman, 153 Wn.2d 765, 771-73, 108 P.3d 753 (2005).

First, we consider any express or implicit legislative intent based on the criminal statutes involved. Freeman, 153 Wn.2d at 771-72. Here, neither the possession of stolen property in the second degree statute nor the trafficking in stolen property in the first degree statute explicitly address legislative intent about separate punishments. See RCW 9A.56.160; RCW 9A.82.050. Nor do the parties present other evidence of legislative intent.

Second, if the legislature's intent is unclear, we normally use the "same evidence" or "same elements" test set forth in Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), to assess if the two offenses are the same in both fact and law.[3] Freeman, 153 Wn.2d at 772; State v. Martin, 149 Wn. App. 689, 698-99, 205 P.3d 931 (2009). Here, Dougal does not argue that his convictions are the same in fact and law. Instead, Dougal focuses his appeal on applying the third step in determining legislative intent, the merger doctrine.

The merger doctrine is a tool of statutory interpretation "used to determine whether the Legislature intended to impose multiple punishments for a single act

---

[3] "Offenses are the same in fact when they arise from the same act or transaction. They are the same in law when proof of one offense would also prove the other." Martin, 149 Wn. App. at 699 (citing State v. Calle, 125 Wn.2d 769, 777-78, 888 P.2d 155 (1995)) (footnote omitted). If each offense contains an element that the other does not, we presume that the crimes are not the same offense for double jeopardy purposes. Calle, 125 Wn.2d at 777. We consider the elements of the relevant statutory provisions "as charged and proved" and not in the abstract. Freeman, 153 Wn.2d at 777.

which violates several statutory provisions," even when two crimes have formally different elements. State v. Vladovic, 99 Wn.2d 413, 419 n.2, 662 P.2d 853 (1983); Freeman, 153 Wn.2d at 772. Under the merger doctrine, we presume the legislature intended to punish both offenses through a greater sentence for the greater crime. Freeman, 153 Wn.2d at 772-73.

The merger doctrine applies "when the degree of one offense is raised by conduct separately criminalized by the legislature." Freeman, 153 Wn.2d at 772-73. For example, in State v. Johnson, 92 Wn.2d 671, 672, 600 P.2d 1249 (1979), a jury convicted the defendant of two counts each of first degree rape, first degree kidnapping, and first degree assault. The applicable first degree rape statute required the State to show conduct constituting at least one crime other than rape to prove first degree rape. Johnson, 92 Wn.2d at 674 (citing former RCW 9.79.170(1) (1975)). Because proof of the assaults and kidnappings were necessary elements to prove first degree rape, they merged into the first degree rape conviction. Johnson, 92 Wn.2d at 680-81. Referencing Johnson, the Supreme Court in Vladovic explained that the merger doctrine applies only

> where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping).

Vladovic, 99 Wn.2d at 420-21.

Here, a jury convicted Dougal of possession of stolen property in the second degree and first degree trafficking in stolen property. The court instructed the jury that to convict Dougal of trafficking in stolen property in the

first degree, the State had to prove that Dougal "knowingly" "possess[ed] or obtain[ed] control of stolen property, with intent to sell or transfer the property to another person." See RCW 9A.82.050(1), .010(19).[4]  The court also instructed the jury that to convict Dougal of possession of stolen property in the second degree, the State had to prove that he "knowingly possessed stolen property," valued in excess of $750.  See RCW 9A.56.160(1)(a).

Dougal contends that his second degree possession of stolen property conviction elevated his trafficking conviction to first degree because "to prove that Mr. Dougal was guilty of trafficking in stolen property in the first degree," the State had to "prove Mr. Dougal knew the property was stolen."  According to Dougal, "by proof of the single fact that Mr. Dougal knew the property was stolen, the State obtained a conviction for both possession of stolen property in the second degree and trafficking in stolen property in the first degree."

Dougal overlooks the element of second degree possession of stolen property requiring proof that the stolen property is valued in excess of $750.  RCW 9A.56.160(1)(a).  The State need not prove the value of stolen property to elevate a trafficking charge from second to first degree.  RCW 9A.82.055, .050.  Indeed, the jury here could have acquitted Dougal of possessing stolen property in the second degree if the State was unable to prove that the value of the dehumidifiers exceeded $750, yet convicted him of trafficking in stolen property

---

[4] Although the court's instruction narrowly defines "traffic," the legislature defines it more broadly as "to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person."  RCW 9A.82.010(19).  A person is guilty of trafficking in stolen property in the second degree if the person "recklessly" engaged in such conduct.  RCW 9A.82.055(1).

in the first degree because the value of the dehumidifiers is not an element of the crime the State must prove. Dougal's convictions do not merge because the completed possession of stolen property in the second degree offense was unnecessary to elevate the completed trafficking conviction to first degree.[5] See State v. Kier, 164 Wn.2d 798, 807, 194 P.3d 212 (2008).

Dougal's convictions for second degree possession of stolen property and first degree trafficking in stolen property do not violate double jeopardy. We affirm.

_Brennan, J_

WE CONCUR:

_Smith, J._                          _Andrus, A.C.J._

---

[5] Given our conclusion that the merger doctrine is inapplicable here, we need not reach the fourth step of the legislative intent test, which allows for an exception to the merger doctrine, and requires us to determine whether the statutes under which the jury convicted Dougal have "an independent purpose or effect to each." Freeman, 153 Wn.2d at 773.