# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>     Respondent,<br><br> v.<br><br>DIEGO MARTINEZ-MARTINEZ,<br>aka DIEGO MARTINEZ MARTINEZ,<br><br>     Appellant. | No. 54512-8-II<br><br><br>UNPUBLISHED OPINION |

MAXA, P.J. – Diego Martinez Martinez appeals his convictions for first degree rape and first degree kidnapping and his exceptional sentence based on the victim's particular vulnerability. The convictions arose from an incident in which Martinez Martinez approached a developmentally disabled woman who was waiting for the bus and then kidnapped and raped her in his tent in the woods.

We hold that:

(1) there was sufficient evidence to support the deadly weapon alternative means of the first degree rape conviction based on the victim's testimony, even though the testimony contradicted itself;

(2) the first degree kidnapping conviction merged with the first degree rape conviction in violation of double jeopardy because the kidnapping had no independent purpose from the rape and did not result in a separate injury;

(3) there was sufficient evidence to show that Martinez Martinez knew or should have known that the victim was particularly vulnerable and that the victim's particular vulnerability was a substantial factor in the commission of the offenses;

(4) the particularly vulnerable aggravating factor is not subject to a due process vagueness challenge;

(5) the use of the victim's initials in the to-convict jury instructions or court documents did not violate Martinez Martinez's constitutional rights;

(6) Martinez Martinez is entitled to have his offender score reduced by one point under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021) because one of his prior convictions was for unlawful possession of a controlled substance, but he is not entitled to resentencing because the record is clear that the trial court would have imposed the same exceptional sentence regardless of his offender score; and

(7) the record is unclear as to whether the trial court intended to impose community custody supervision fees as a legal financial obligation (LFO).

Accordingly, we affirm Martinez Martinez's first degree rape conviction, but we remand for the trial court to (1) strike Martinez Martinez's first degree kidnapping conviction, (2) amend Martinez Martinez's offender score in the judgment and sentence, and (3) consider the imposition of community custody supervision fees.

FACTS

*Background*

SM was a 28-year-old female at the time of the incident. She was autistic, developmentally disabled, and had the vocabulary and mental ability of a five- to 10-year-old child. SM generally exhibited little emotion on her face, kept her eyes down during a normal

conversation, had a very soft voice, had child-like vocabulary, and did not speak often. SM had never lived alone. Because SM was unable to manage money by herself and was susceptible to outside influences from other people who wanted to financially exploit her, the Support Services for the Developmentally Disabled (SSDD) managed her finances.

Martinez Martinez lived in a tent in a homeless encampment located in the woods in Tacoma.

*The Incident*

In June 2018, SM was standing at a bus stop when Martinez Martinez began following her. Martinez Martinez had been drinking at the time. Martinez Martinez told SM to go to the nearby smoke shop across the street with him, where he bought beer.

After leaving the smoke shop, Martinez Martinez told SM to go to the woods with him. Martinez Martinez raped SM three times in his tent. At some point, Martinez Martinez displayed a knife and SM grabbed it, cutting her hands during the process. While Martinez Martinez was raping SM, he asked her for money several times. SM told Martinez Martinez that she did not have any money.

SM eventually was able to leave Martinez Martinez's tent and went home. She told her mother that she had been kidnapped and raped. The next day, SM went to the SSDD office, where she told Sandra Bayer, the executive director for SSDD, that she had been kidnapped and raped. Bayer called the police.

Officer Matthew Watters interviewed SM about what had happened the night before. He then took her to the local hospital to have a rape kit completed. At the hospital, nurse Kathi Lewis, a board certified sexual assault nurse examiner, conducted an examination of SM and

3

noted that she had lacerations on both hands. Stacia Adams, a child forensic interviewer, attempted to interview SM.

The State charged Martinez Martinez with first degree rape and sexually motivated first degree kidnapping. Both charges alleged that Martinez Martinez was armed with a deadly weapon and that SM was particularly vulnerable. The first degree rape charge was based on two alternative means: the use or threat of using a deadly weapon and/or kidnapping. The first degree kidnapping charge alleged that the kidnapping was done to facilitate the crimes of rape and/or robbery.

*Jury Trial*

At trial, SM testified using her full name, and she was referred to by her full name throughout the trial. SM initially testified several times during direct-examination and cross-examination that she saw Martinez Martinez's knife while she was being raped. She testified as follows:

> Q: Okay. When did you first see the knife?
> A: In his hand.
> Q: Okay. And did he -- where did he have it positioned?
> A: In his left hand.
> Q: Okay. And was -- did you see it?
> A: Yeah.
> Q: How close did the knife get to you?
> A: Right here.
> Q: To your chest?
> A: Yeah.

5 Report of Proceedings (RP) at 532-33.

> Q: Where was the knife when he was raping you?
> A: In his hand.

5 RP at 538.

> Q: So you said, earlier today, that while he was raping you, he had the knife in his hand. Is that true?

4

A: Um-hum.  Yeah.
Q: Okay.  So we're clear, when you say he was raping you, is that the part where his private part was inside your private part?
A: Yeah.
Q: And while that was going on, he at the same time had a knife in his hand?
A: Yeah.
. . . .
Q:  And at the same time, he had a knife in his hand while he was raping you; is that true?
A: Yeah.

5 RP at 565-67.

Toward the end of cross-examination, SM testified for the first time that Martinez Martinez pulled out the knife as she was leaving the woods and after he had raped her.  From that point forward, SM began to testify for the remainder of cross-examination and redirect that Martinez Martinez did not have the knife his hands while he was raping her.

Bayer and SM's mother both testified that SM functioned either at the level of a seven- or 10-year-old child.  Bayer explained that SSDD distributed only small sums of money each week in part because SM was easily susceptible to people who wanted to financially exploit her.

Watters testified that when he interviewed SM, he had to ask her very basic questions, she had very limited vocabulary, and she was almost non-verbal in her responses, providing only one or two word answers.  Watters testified that SM exhibited no emotions during their conversation and made limited eye contact with him.  Another police officer involved in the investigation likewise testified that SM appeared developmentally delayed to him.

Lewis testified that she had been told before meeting SM that she was developmentally disabled and that her conversation with SM affirmed that fact.  Lewis explained that she immediately noticed that SM had trouble understanding the examination procedure and could verbalize her thoughts with only a couple of words at a time.  Lewis testified that she had to ask direct questions and simple vocabulary to piece together what had happened to SM.

5

Adams testified that she had been told before her interview with SM that she functioned around the age level of a seven-year-old child. Adams testified that she noticed SM's mental acuity deficiency as soon as SM started speaking and that she believed that SM functioned closer to a five-year-old. Adams stated that during the entire interview, SM had trouble answering her questions and would give an answer that did not track the question being asked.

*Jury Instructions*

The to-convict jury instructions used SM's initials, rather than her full name. The trial court instructed the jury that it could find Martinez Martinez guilty of first degree rape if it found that he had either (a) "used or threatened to use a deadly weapon or what appear[ed] to be a deadly weapon" or (b) "kidnapped [SM]," and that the jury did not need to be unanimous as to which alternative means had been proven beyond a reasonable doubt. Clerk's Papers (CP) at 33. The court instructed the jury that it could find Martinez Martinez guilty of first degree kidnapping if it found that he had "abducted [SM] with intent to facilitate the commission of rape and/or robbery." CP at 44. Martinez Martinez did not object to these jury instructions.

The jury convicted Martinez Martinez of first degree rape and first degree kidnapping. The jury found in special verdict forms the deadly weapons enhancement on both counts, and that Martinez Martinez knew or should have known that SM was particularly vulnerable or incapable of resistance on both counts. The jury also found in a special verdict form that Martinez Martinez had committed the crime of first degree kidnapping with sexual motivation.

*Sentencing*

At sentencing, the State conceded that the first degree rape and first degree kidnapping constituted the same course of conduct and as a result, Martinez Martinez should only be sentenced on the rape conviction and not the kidnapping conviction. The court accepted the

State's concession. The State calculated Martinez Martinez's standard range sentence of 138 to 184 months for first degree rape based on an offender score of 5, which included one point for an unlawful possession of a controlled substance conviction. The State requested an exceptional sentence based on the particularly vulnerable aggravating factor.

The trial court imposed an exceptional sentence for the first degree rape conviction based on the particularly vulnerable aggravating factor of 240 months in confinement plus 24 months for the deadly weapon enhancement, for a total of 264 months to life. The court explained why it found the particularly vulnerable aggravating factor to be a substantial and compelling reason to impose an exceptional sentence. The court did not impose any sentence on the kidnapping conviction.

The trial court found that Martinez Martinez was indigent for purposes of imposing LFOs. The court stated that the only financial penalty it would be imposing was the crime victim penalty assessment because that was mandatory. The judgment and sentence stated that "payment of nonmandatory legal financial obligations [was] inappropriate" because Martinez Martinez was indigent. CP at 139. However, in two preprinted sections the judgment and sentence imposed supervision fees as determined by the Department of Corrections (DOC) as a condition of community custody.

Martinez Martinez appeals his convictions and his sentence.

ANALYSIS

A.      SUFFICIENCY OF EVIDENCE – USE OF DEADLY WEAPON

Martinez Martinez argues that the State did not present sufficient evidence to prove that he used a deadly weapon to support one of the alternative means of first degree rape because the assault had ended before a weapon was displayed. We disagree.

1.    Legal Principles – Jury Unanimity

Criminal defendants have the right to a unanimous jury verdict under article I, section 21 of the Washington Constitution.  This right includes the right to a unanimous jury determination as to the specific means by which the defendant committed an alternative means offense.  *State v. Smith*, 17 Wn. App. 2d 146, 151, 484 P.3d 550, *review denied,* 198 Wn.2d 1005 (2021).  An alternative means crime is one where the statute defining the crime provides that the proscribed criminal conduct can be proved in multiple ways.  *Id.* at 150.  If there is sufficient evidence to support each of the alternative means presented to the jury, express jury unanimity as to which means the defendant committed the crime is not required.  *State v. Sandholm*, 184 Wn.2d 726, 732, 364 P.3d 87 (2015).  But if there is insufficient evidence to support any one of the alternative means presented to the jury, the conviction must be reversed.  *Id.*

RCW 9A.44.040 provides four alternative means of committing first degree rape.  The State relied on two of the means at trial.  First, under RCW 9A.44.040(1)(a), a defendant commits first degree rape when he or she "engages in sexual intercourse with another person by forcible compulsion" and "[u]ses or threatens to use a deadly weapon or what appears to be a deadly weapon."  Second, under RCW 9A.44.040(1)(b) a defendant commits first degree rape when he or she "engages in sexual intercourse with another person by forcible compulsion" and "[k]idnaps the victim."  Martinez Martinez disputes only that the State did not provide sufficient evidence to prove that he used or threatened to use a deadly weapon to support his first degree rape conviction under RCW 9A.44.040(1)(a).

2.    Sufficiency of Evidence

When evaluating the sufficiency of evidence for a conviction, we view the evidence in the light most favorable to the State and ask whether a rational trier of fact could have found the

elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). As part of the test for the sufficiency of evidence, we assume the truth of the State's evidence and all reasonable inferences drawn from the evidence. *Id.* at 106. These inferences must be drawn in the State's favor and strongly against the defendant. *Id.* And we defer to the fact finder's resolution of conflicting testimony and evaluation of the evidence's persuasiveness. *Id.* Circumstantial evidence is as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

    3.    Analysis

Here, the record shows that SM testified several times during direct and cross-examination that Martinez Martinez had a knife in his hand while raping her. She explained that the knife was near her chest and that the knife cut her hand when she grabbed it to prevent Martinez Martinez from stabbing her. Lewis testified that she noticed lacerations on SM's hands, and the trial court admitted several photos of the lacerations.

SM did not state until the end of cross-examination that she saw the knife for the first time after the rape occurred as she was leaving the woods or tent after being prompted by Martinez Martinez about the timeline. Even then, when Martinez Martinez continued to repeat his questions about the timeline of when the knife appeared, SM responded that "[h]e was about to stab me" and that she was "on the ground." 5 RP at 590. SM then continued to agree that Martinez Martinez did not have the knife in his hand while he was raping her. However, there also was testimony about SM's developmental disability, low vocabulary level, and the need to use very simple vocabulary along with simple questions to ascertain information from her.

There is no question that SM's testimony was contradictory. But she provided clear, unequivocal testimony on direct examination that Martinez Martinez was holding a knife when

he raped her. It was well within the jury's province to decide which portions of SM's testimony to believe and which portions to disregard. *See Homan*, 181 Wn.2d at 106. The jury apparently considered SM's ability to understand questions and determined that SM's first version of the incident was more believable than her later version.

Martinez Martinez essentially is asking us to reweigh SM's testimony on appeal when he highlights the inconsistency between SM's two versions of the incident and the fact that SM stated that the first version was not true. But we cannot re-evaluate credibility and weight of testimony on appeal. *Id.*

Martinez Martinez argues that our deference to jury determinations on credibility does not include ignoring explicit testimony recanting earlier testimony. But Martinez Martinez provides no legal authority to support his argument and does not explain why his proposition falls outside the scope of prohibited reweighing of testimony on appeal.

We hold that there was sufficient evidence to support the deadly weapons alternative means element. As a result, there was no requirement to have a particularized expression of unanimity in this case.

B.      DOUBLE JEOPARDY – FIRST DEGREE RAPE AND KIDNAPPING

Martinez Martinez argues that his convictions for first degree rape and first degree kidnapping violated double jeopardy because the kidnapping elevated the seriousness level of the rape from second degree to first degree and had no independent purpose apart from the rape. We agree.

1.      Legal Principles

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit double jeopardy. This prohibition includes that a person

cannot receive multiple punishments for the same act. *See State v. Muhammad*, 194 Wn.2d 577, 616, 451 P.3d 1060 (2019). We review alleged violations of double jeopardy de novo. *State v. Arndt*, 194 Wn.2d 784, 815, 453 P.3d 696 (2019). The remedy for a violation of double jeopardy is to vacate the lesser charge or the charge that carries a lesser sentence. *State v. Albarran*, 187 Wn.2d 15, 21-22, 383 P.3d 1037 (2016).

Under the merger doctrine, double jeopardy generally applies when the commission of one offense elevates the degree of another offense. *State v. Berg*, 181 Wn.2d 857, 865, 337 P.3d 310 (2014). The presumption is that " 'the legislature intended to punish both offenses through a greater sentence for the greater crime.' " *Arndt*, 194 Wn.2d at 819 (quoting *State v. Freeman*, 153 Wn.2d 765, 772-73, 108 P.3d 753 (2005)). An exception is when the two offenses have "independent purposes or effects." *Arndt*, 194 Wn.2d at 819. An independent purpose or effect exists when the offense injures the victim " 'in a separate and distinct manner from the crime for which it also serves as an element.' " *Id.* (quoting *State v. Harris*, 167 Wn. App. 340, 355, 272 P.3d 299 (2012)).

In *State v. Johnson*, the Supreme Court determined that the legislature intended to punish criminal defendants only for first degree rape when a kidnapping conviction elevates the seriousness level of the rape and the kidnapping has no independent purpose or a separate and distinct injury from the rape. 92 Wn.2d 671, 676, 680-81, 600 P.2d 1249 (1979). In that case, the court concluded that the defendant's first degree kidnapping convictions and first degree assault convictions merged with his first degree rape convictions because the kidnapping and assault (1) elevated the rape to first degree rape, (2) occurred almost contemporaneously in time and place with the rape, (3) had no independent purpose other than to force the victims to have

sexual intercourse with the defendant, and (4) involved no injury to the victims independent of or greater than the injury of rape. *Id.* at 681.

> 2.  Analysis

The State does not dispute that one of the purposes of Martinez Martinez's kidnapping was to facilitate the rape. But the State argues that the kidnapping had an independent purpose: to steal SM's money. However, even though Martinez Martinez asked SM for money during the rape, there is no indication that he kidnapped her in order to take her money. And there was no evidence that Martinez Martinez took any money from SM at any time during the kidnapping. Therefore, SM did not suffer an injury from the kidnapping that was separate and distinct from the rape. *See Arndt*, 194 Wn.2d at 819.

As in *Johnson*, the kidnapping elevated the rape to first degree rape, occurred almost contemporaneously in time and place with the rape, had no independent purpose other than to force SM to have sexual intercourse with Martinez Martinez, and involved no injury other than the rape. *See* 92 Wn.2d at 681. Therefore, the two offenses must merge for double jeopardy purposes.

We hold that the first degree kidnapping conviction violated double jeopardy. Accordingly, the trial court on remand must strike Martinez Martinez's first degree kidnapping conviction. Resentencing is not required because the trial court imposed no sentence for the first degree kidnapping conviction and that conviction was not included in the offender score.

C.  PARTICULARLY VULNERABLE AGGRAVATING FACTOR

Martinez Martinez argues that (1) the State failed to present sufficient evidence to show that he knew or should have known that McKinney was particularly vulnerable and that

McKinney's vulnerability was a substantial factor in the commission of the sexual assault and (2) the particular vulnerability aggravating factor is unconstitutionally vague. We disagree.

    1.    Sufficiency of the Evidence

        a.    Legal Principles

RCW 9.94A.535(3)(b)[1] provides that an exceptional sentence upward may be imposed when the jury finds that "[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance." The State bears the burden to show "(1) that the defendant knew or should have known (2) of the victim's *particular* vulnerability and (3) that vulnerability must have been a substantial factor in the commission of the crime." *State v. Suleiman*, 158 Wn.2d 280, 291-92, 143 P.3d 795 (2006).

We review a jury's special verdict finding under the sufficiency of the evidence standard. *State v. Perry*, 6 Wn. App. 2d 544, 552, 431 P.3d 543 (2018). The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *Homan*, 181 Wn.2d at 105.

        b.    Knew or Should Have Known

The record shows that there was sufficient evidence for a rational fact-finder to find that Martinez Martinez knew or should have known that SM was particularly vulnerable because of her autism. Multiple witnesses testified that SM functioned at a level of a five- to 10-year-old and spoke with a soft voice with child-like vocabulary. In addition, at least four people testified that based on their limited interaction with SM, they quickly realized that SM did not have the

---

[1] RCW 9.94A.535 has been amended since the events of this case transpired. Because these amendments are not material to this case, we do not include the word "former" before RCW 9.94A.535.

same mental capabilities as an average 28-year-old. Accordingly, we hold that sufficient evidence supported the jury's conclusion that Martinez Martinez knew or should have known that SM was particularly vulnerable.

c. Particular Vulnerability as a Substantial Factor

Here, the record shows that SM's development disability was a substantial factor in the kidnapping and rape offenses when compared to the average 28-year-old without SM's disability. Consistent with how a young child could act in a similar situation, SM testified that she went to the smoke shop and the woods with Martinez Martinez simply because he told her to do so. And as stated above, several witnesses testified that SM functioned at the age of a young child. A jury rationally could conclude that SM's developmental disability was a substantial factor in the commission of the kidnapping and rape based off of SM's demeanor at trial, her testimony that she followed Martinez Martinez because he simply told her to, and testimony from others who described SM's cognitive ability and overall personality.

Martinez Martinez claims that SM's vulnerability was not a substantial factor in the commission of the offenses because he did not target her specifically due to her disability. But when analyzing particular vulnerability, the focus is on whether "the victim is more vulnerable to the offense than other victims," not whether the defendant targeted an individual because of a disability. *See State v. Bedker*, 74 Wn. App. 87, 94, 871 P.2d 673 (1994).

We hold that sufficient evidence supports the jury's conclusion that SM's particular vulnerability was a substantial factor in the commission of the offenses.

2. Vagueness Challenge

Martinez Martinez argues that the particular vulnerability aggravating factor stated in RCW 9.94A.535(3)(b) is unconstitutionally vague. But the law is clear that aggravating

14

sentencing factors are not subject to vagueness challenges. *State v. Baldwin*, 150 Wn.2d 448, 459, 78 P.3d 1005 (2003); *State v. Burrus*, 17 Wn. App. 2d 162, 177, 484 P.3d 521, *review denied,* 198 Wn.2d 1006 (2021); *State v. Brush*, 5 Wn. App. 2d 40, 57, 63, 425 P.3d 545 (2018). Therefore, we reject Martinez Martinez's argument.

D.      USE OF VICTIM'S INITIALS IN JURY INSTRUCTIONS

Martinez Martinez argues that the use of SM's initials in the to-convict jury instructions (1) was a judicial comment on the evidence in violation of article IV, section 16, (2) violated his right to due process and a fair and impartial jury, and (3) violated his right to a public trial. Division One of this court rejected all three arguments in *State v. Mansour*, 14 Wn. App. 2d 323, 329-33, 470 P.3d 543 (2020), *review denied* 196 Wn.2d 1040 (2021). Martinez Martinez urges us to reject the holding in *Mansour*, but we agree with Division One's reasoning. Therefore, we reject Martinez Martinez's arguments regarding the use of SM's initials.

E.      REVISED OFFENDER SCORE UNDER *BLAKE*

Martinez Martinez argues that he is entitled to be resentenced because his offender score at the time of sentencing included a conviction for unlawful possession of a controlled substance. The State concedes that remand is appropriate for the trial court to determine the effect of *Blake* on his offender score, but argues that resentencing is unnecessary because Martinez Martinez's exceptional sentence was not based on his offender score. We agree with the State.

In *Blake*, the Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violates state and federal due process clauses and therefore is void. 197 Wn.2d at 195. "[A] conviction based on an unconstitutional statute cannot be considered in calculating the offender score." *State v. LaBounty*, 17 Wn. App. 2d 576, 581-82, 487 P.3d 221 (2021).

Martinez Martinez's offender score at sentencing was calculated at 5 points, which included a conviction for possession of a controlled substance. Based on that offender score, Martinez Martinez's standard range sentence for first degree rape was 138 to 184 months. Martinez Martinez's offender score without the unlawful possession of a controlled substance would be 4 points, which has a standard range sentence of 129 to 171 months – a 13 month difference at the high end. RCW 9.94A.510.

Resentencing is not necessarily required when a defendant's offender score includes a void conviction and the defendant was sentenced to an exceptional sentence. "When the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy *unless the record clearly indicates the sentencing court would have imposed the same sentence anyway*." *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997) (emphasis added).

Here, the trial court provided an extensive explanation why it found the jury's finding of the particularly vulnerable aggravating factor a substantial and compelling reason to impose an exceptional sentence upward. The court emphasized that Martinez Martinez took advantage of a person with a significant developmental disability who was simply minding her own business. And because of SM's disability, she was incapable of resistance when Martinez Martinez kidnapped and raped her. During its oral ruling, the sentencing court did not reference the now-incorrect standard sentencing range.

We believe that the record is clear that the trial court would have imposed the same exceptional sentence even if the standard range sentence had been 13 months lower. Therefore, we remand for the trial court to correct the offender score on the judgment and sentence but not for resentencing.

F.       COMMUNITY CUSTODY SUPERVISION FEES

Martinez Martinez argues that the trial court erred when it imposed community supervision fees as an LFO despite finding that he was indigent. We conclude that the record is unclear whether the trial court intended to impose supervision fees.

RCW 9.94A.703(2)(d) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the department." Supervision fees are considered discretionary LFOs because they are waivable by the trial court. *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). However, because supervision fees do not constitute "costs" under RCW 10.01.160(3), they can be imposed even if the defendant is indigent. *Id.* at 536-37.

Here, the judgment and sentence section regarding community custody imposed supervision fees as determined by DOC as a condition of community custody. But the judgment and sentence stated that the "payment of nonmandatory legal financial obligations [was] inappropriate" because the defendant was indigent. CP at 139. And at sentencing, the court stated, "The imposition of financial penalties is only going to be the Crime Victim Penalty Assessment, because that is mandatory." 9 RP at 1149. Therefore, the imposition of supervision fees seems inconsistent with the court's intention to impose mandatory LFOs only.

The record is unclear whether the trial court intended to impose supervision fees. Accordingly, on remand the trial court should consider in its discretion whether to impose community custody supervision fees.

## CONCLUSION

We affirm Martinez Martinez's first degree rape conviction, but we remand for the trial court to (1) strike Martinez Martinez's first degree kidnapping conviction, (2) amend Martinez

17

No. 54512-8-II

Martinez's offender score in the judgment and sentence, and (3) consider the imposition of supervision fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, P.J.

We concur:

VELJACIC, J.

PRICE, J.